UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **OVIDE PELLERIN, JR.** | * | **CIVIL ACTION NO. 13-0216** |
| **VERSUS** | * | **JUDGE HAIK** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

### REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Ovide Pellerin, Jr., born February 26, 1963, filed applications for a period of disability, disability insurance benefits, and supplemental security income on October 25, 2010, alleging disability as of October 6, 2010, due to congestive heart failure, hypertension, diabetes, and hyperlipidemia.

### FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is supported by substantial evidence, based on the following:

**(1) Records from Dr. Karen Curry dated October 6, 2010 to December 27, 2010**. On October 6, 2010, claimant was admitted with bilateral ankle swelling and shortness of breath. (Tr. 214, 218). An echocardiogram revealed a left ejection fraction of 20%. (Tr. 228-29). The diagnosis was congestive heart failure, atrial fibrillation, and hypertension. (Tr. 200, 242-46).

On December 10, 2010, claimant's had improved. (Tr. 181). His congestive heart failure was stable. (Tr. 182).

**(2) Consultative Examination by Dr. Toyin Bamgbola dated February 26, 2011**. Claimant complained of shortness of breath, hypertension and associated congestive heart failure; gout of the right elbow, ankle joint and big toe, and diabetes mellitus. (Tr. 251). He had been placed on medical intervention for congestive heart failure, and had improvement of his symptoms with complete relief of orthopnea. For his gout, he was in medical therapy with clinical improvement. His blood sugar had been well-controlled on oral hypoglycemic agents. He was on medication for hypertension and hypercholesterolemia.

Claimant reported that he could dress and feed himself; stand at one time for 25 minutes and for one out of a total of eight hours; walk on ground level for 15 minutes; sit for up to 30 to 50 minutes, lift up to 15 pounds, and drive for as long as possible. (Tr. 252). Household chores included sweeping but no mopping, no vacuuming, no cooking, no doing dishes, no shopping, no climbing stairs and no mowing. His medications

included Avapro, Furosemine, Coreg, Warfarin, Metformin, Spironolactone, Probenecid/Colchicine, Digoxin, and Simvastatin.

On examination, claimant was 6 feet tall and weighed 250 pounds. His blood pressure was 147/115. He could get on and off of the examination table and up and out of a chair without difficulty.

Dr. Bamgbola stated that claimant had varicosities on the lower legs with a reduction in pedal pulsation, apparently from peripheral vascular disease. (Tr. 253). He had clinical evidence of cardiac arrhythmia, but no shortness of breath or reduction in air entry at the time of the physical examination. He opined that this was probably due to medical stabilization of his congestive heart failure. (Tr. 254 ).

Dr. Bamgbola noted that claimant had multiple risk factors for cardiac morbidity, including hypertension, diabetes mellitus, severe obesity, and hyperlipidemia. (Tr. 254). He stated that claimant was on appropriate medical intervention. He found that other than the heart disease, claimant had no identified end organ injury from hypertension or diabetes mellitus. He had no gross ambulatory deficits, and did not need an assistive device for ambulation.

**(3) Records from LSU University Medical Center ("UMC") dated March 15, 2010 to March 16, 2011 to September 6, 2011**. On March 23, 2011, claimant's hypertension and hyperlipidemia were controlled. (Tr. 307). On July 28, 2011,

claimant's hypertension was controlled. (Tr. 273). On September 8, 2011, claimant's blood pressure was 106/56. (Tr. 265).

A cardiology report dated March 15, 2011, revealed heart disease without overt disease process. (Tr. 303). A cardiology report dated July 11, 2011, showed good left ventricular function. (Tr. 277). Spirometry results dated August 30, 2011, showed that claimant's FEV1 was within normal limits. (Tr. 268).

**(4) Claimant's Administrative Hearing Testimony**. At the hearing on November 8, 2011, claimant was 48 years old. (Tr. 24). He testified that he was 6 feet 1 inch tall and weighed 330 pounds. He had graduated from high school.

Claimant testified that he had a driver's license and was able to drive. He had last worked full-time in 2009 as a resident manager for a disability complex for Goodwill Industries. (Tr. 25). He reported that he was currently working part-time at the same job making $468 per month.

Prior to that, claimant worked for Lafayette Auto Auction parking, delivering cars and doing some security. (Tr. 26). He had also worked as a dispatcher. He testified that the dispatcher job was "the easiest job I ever had," and that he would sit and answer the phone during the day. (Tr. 33-34). He stated that he would having problems returning to that job because of foot swelling, bowel problems, and fatigue. (Tr. 34).

Regarding medications, claimant testified that he took 11 to 12 per day including blood thinners, heart pills, diabetes medications, and Advil. (Tr. 26-27). He stated that

they relieved certain symptoms, but he still had foot and leg pain. He also reported side effects of diarrhea, headaches, dizzy spells when bending down, and shoulder pain and shortness of breath with walking. (Tr. 27). He said that he went to the doctor every three to four weeks to four or five times a month. (Tr. 35-36).

As to limitations, claimant testified that he could walk a little ways before becoming short of breath. (Tr. 28). He could stand about 10 to 12 minutes before having to sit. He stated that he could sit all day if his feet were elevated; otherwise, his ankles and legs swelled after 30 to 45 minutes. He said that he could lift five pounds. (Tr. 31).

Regarding activities, claimant testified that he did a little bit of sweeping, mopping, dusting, and laundry. (Tr. 28). He shopped with a friend's help.

**(5) Administrative Hearing Testimony of Thomas M. Lafosse, Vocational Expert ("VE")**. Mr. Lafosse classified claimant's past work as a warehouseman as medium with a Specific Vocational Preparation ("SVP") of 2; a hot shot delivery driver as medium with an SVP of 2; a dispatcher as sedentary with an SVP of 5; a car jockey as light with an SVP of 2, and a property manager as light with an SVP of 5. (Tr. 38-39).

The ALJ asked Mr. Lafosse to assume a claimant age a claimant age 48 with 12 years of education, who had the ability to perform sedentary work with limitations as to sitting only 30 minutes at a time, after which he had to stand for 12 to 15 minutes before returning to a seated position. (Tr. 39). In response, the VE testified that he could return to his past work as a dispatcher.

When claimant's attorney asked whether claimant could do the dispatcher job if he had to elevate his feet after sitting for 12 to 15 minutes at a time, Mr. Lafosse stated that he did not think that claimant could work effectively with his feet elevated. (Tr. 39-40). When she asked the VE to assume that claimant had to miss three to four days of work per week for doctors' appointments, Mr. Lafosse testified that claimant would have a very hard time maintaining employment. (Tr. 40).

**(6) The ALJ's Findings**. Claimant argues that: (1) the ALJ improperly rejected the presence of additional severe impairments without good cause; (2) the ALJ's residual functional capacity assessment is not supported by substantial evidence, and (3) the ALJ applied an improper legal standard to conclude that plaintiff could return to his past relevant work as a dispatcher.

As to the first argument, claimant argues that the ALJ erred by finding that his peripheral vascular disease, hypertension, diabetes mellitus, and shortness of breath were non-severe impairments. [rec. doc. 8, p. 4]. Specifically, he asserts that the ALJ used the incorrect standard when he failed to find these conditions "severe," citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

In *Loza v. Apfel,* 219 F.3d 378 (5th Cir. 2000), the Fifth Circuit reiterated the *Stone* standard as follows: "[A]n impairment can be considered as not severe *only if it is a slight abnormality [having] such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work*, irrespective of age, education or work

experience." (emphasis added). *Id.* at 391 (*citing Stone*, 752 F.2d at 1101). In censuring misuse of the severity regulation, the court in *Stone* forewarned that the Fifth Circuit would "in the future assume that the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement *unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) is used.*"[1] (emphasis added). *Loza*, 219 F.3d at 391 (*quoting Stone*, 752 F.2d at 1106).

After the Supreme Court's decision in *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Fifth Circuit addressed the issue of whether *Yuckert* had altered the standard the Fifth Circuit announced in *Stone*. The Fifth Circuit concluded that it had not:

> *Yuckert* simply upheld the facial validity of the severity regulation as an appropriate method of streamlining the review process. *Yuckert* did not conclude that the severity regulation properly interpreted the statutory requirements, and *Yuckert* did not purport to state the proper definition of the term "severe impairment." Thus, *Stone* is not inconsistent with the Supreme Court's pronouncement in *Yuckert*; *Stone* merely reasons that the regulation cannot be applied to summarily dismiss, without consideration of the remaining steps in the sequential analysis, claims of those whose impairment is more than a slight abnormality.

*Id.*, 219 F.3d at 391.

---

[1] Section (c) of 404.1520 provides in part: "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."

Here, the ALJ cited the following severity standard: "[a]n impairment is only considered non-severe if it is only a slight abnormality, having such a minimal impact on the individual so that it would not be expected to interfere with the claimant's ability to do work regardless of age, education or work experience.  *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  A severe impairment is one that causes more than a minimal limitation in an individual's physical or mental ability to perform basic work activities.  In determining whether an impairment is severe, the Administrative Law Judge must consider any symptoms that are reasonably related to an individual's medically determinable impairments.  (20 C.F.R. §§ 404.1521, 416.921; SSR 85-28 and SSR 96-3p).  The Administrative Law Judge must analyze both the disabling effect of each of the claimant's ailments individually and the combined effect of all impairments in reaching a decision of severity.  *Fraga v. Bowen*, 810 F.2d 1296 (5th Cir. 1987)."  (Tr. 13).

The undersigned finds that the ALJ properly applied the Fifth Circuit's standard under *Stone* in this case.  In finding that claimant's diagnoses of hypertension, diabetes, and hyperlipidemia were not severe, the ALJ noted that the record showed that claimant did not need frequent physician intervention, hospitalization, or emergency room treatment for these impairments.  (Tr. 14).  It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability.  *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence"

for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms).

 Additionally, the ALJ observed that claimant's conditions of high blood pressure, diabetes, and high cholesterol were typically treated with medication with sustained benefits. (Tr. 14). Dr. Bamgbola found that while claimant had multiple risk factors for cardiac morbidity including hypertension, diabetes, obesity, and hyperlipidemia, the claimant was on appropriate medication. (Tr. 16). Further, Dr. Bamgbola opined that other than the heart disease, claimant had no identified end organ injury from hypertension or diabetes mellitus or any gross ambulatory deficits. (Tr. 16). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

 In analyzing claimant's impairments under *Stone*, the ALJ concluded that due to the paucity of treatment for claimant's hypertension, diabetes, and high cholesterol combined with the fact that there was no evidence of exertional limitations or disabling side effects from claimant's medications, his impairments were no more than a slight abnormality which did not significantly limit his ability to perform basic work-related activities. (Tr. 14). These findings are supported by the medical records. Accordingly, the ALJ's opinion is entitled to deference.

Next, claimant argues that the ALJ erred in assessing his residual functional capacity.

The ALJ determined that claimant had the RFC to perform sedentary work, except that he was limited to standing for 12 to 15 minutes before returning to sedentary work after sitting for no more than 30 minutes. (Tr. 15). He found claimant credible to the extent that he would experience some limitations with prolonged sitting and heavy lifting, and reduced claimant's RFC to accommodate these limitations. However, he did not find claimant's allegations that he was incapable of all work activity to be credible. (Tr. 16).

Claimant argues that the consultative examiner, Dr. Bamgbola, did not complete a functional assessment regarding claimant's ability to perform work-related activity, "such as sitting, standing, walking, lifting, carrying, and handling objects." [rec. doc. 8, p. 4]. However, the absence of such a statement does not, in itself, make the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In a situation such as this one, where no medical statement has been provided, the Court's inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record. *Id*.

Here, the ALJ gave great weight to Dr. Bamgbola's opinion that claimant's conditions were controllable with medications and that claimant had no end organ injury from hypertension or diabetes.[2] (Tr. 16). Neither Dr. Bamgbola nor any of claimant's

---

[2]Claimant argues that the State Agency concluded that his combined impairments prevented past relevant work. [rec. doc. 8, p. 5, n. 3]. However, the Court notes that this report was not completed by a acceptable medical source, but an SDM. (Tr. 48). Only "acceptable medical sources" can establish the existence of a medically determinable impairment, give

treating physicians at UMC indicated that claimant's physical impairments were disabling. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir.1989) (substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician on record stated that claimant was physically disabled).

Additionally, the ALJ determined that claimant's allegations were not credible. (Tr. 16). In support of his finding, he cited claimant's Adult Function indicating that claimant walked, drove, shopped by phone, paid bills, and ate independently. (Tr. 16, 155-57). Additionally, the ALJ noted that claimant had reported that he was able to follow written and spoken instructions, and finish what he started. It is appropriate to consider the claimant's daily activities when deciding the claimant's disability status. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995).

Further, claimant's testimony conflicts with the evidence. At the hearing, claimant testified that he did a little bit of sweeping, mopping, dusting, and laundry, and shopped with a friend's help. (Tr. 28). In the Adult Function Report, claimant stated that he prepared food or meals for two hours per day, walked, drove, shopped for food and clothes by phone, paid bills, watched television, and made phone calls. (Tr. 155-157). However, during his examination with Dr. Bamgbola, he reported that did no mopping, no

---

medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. *Thibodeaux v. Astrue*, 324 Fed.Appx. 440, 445 (5th Cir. 2009) (*citing* SSR 06-03p).

vacuuming, no cooking, no doing dishes, no shopping, no climbing stairs and no mowing. (Tr. 252). The ALJ's finding as to credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

Moreover, the ALJ noted that although claimant alleged that he could not do any type of work, his impairments were responsive to medication. (Tr. 17). Additionally, the ALJ found that while claimant testified that he could not do his past work as a dispatcher because he would have to sit all day, the vocational expert testified that claimant could work as a dispatcher without having to sit all day. (Tr. 39). As the ALJ's RFC finding is supported by the evidence, it is entitled to deference.

Next, claimant argues that the hypothetical was defective because it improperly included his vocational factors of age and education. [rec. doc. 8, p. 6]. He asserts that once the ALJ factored claimant's vocational factors into the hypothetical, he was required to include the disabilities or impairments he "recognized as 'severe.'" However, the ALJ found that claimant was not disabled at Step 4, which eliminated the need for vocational expert testimony. *Talbert v. Shalala*, 44 F.3d 1004, n. 6 (5th Cir. 1994) (testimony of vocational expert unnecessary where ALJ determined at step four that claimant could perform past relevant work and was not disabled); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989).

In any event, the hypothetical properly included the limitations in Dr. Bamgbola's report. As the ALJ's hypotheticals to the vocational expert reasonably incorporated all

12

disabilities of the claimant *recognized by the ALJ*, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. (emphasis added). *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED*

*SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

July 30, 2014, at Lafayette, Louisiana.

*[signature]*

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

Copy sent: RTH
On: 7/30/2014
By: MBD